1  HARTOG, BAER, ZABRONSKY & VERRIERE
   A Professional Corporation
2  Andrew R. Verriere, SBN: 264674
   Kevin P. O'Brien, SBN: 215148
3  4 Orinda Way, Suite 200-D
   Orinda, CA 94563
4  Tel No.:  (925) 253-1717
   Fax No.:  (925) 253-0334
5  Email:  *averriere@hbzvlaw.com*
            *kobrien@hbzvlaw.com*
6  Attorneys for *Mary Obana, Mary Obana-Lannon,*
   *Stephen Obana, William Obana, M.D., and*
7  *Kathryn Obana, M.D.*

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10

11 *In the matter of:*                 CASE NO. _____

12 THE CRYSTI OBANA REVOCABLE          **NOTICE OF REMOVAL; UNDER**
   TRUST.                              **28 U.S.C. § 1441(a)**
13                                     **(FEDERAL QUESTION)**

14

15

16

17

18         TO THE CLERK OF THE ABOVE-ENTITLED COURT:

19         PLEASE TAKE Notice that defendant Mary Obana-Lannon hereby removes

20 to this Court the state court action described below.

21         1.      On January 6, 2022 Plaintiff/Petitioner Crysti Obana commenced an

22 action against Defendants/Respondents Mary Obana, Mary Lannon-Obana, Stephen

23 Obana, William Obana, and Kathryn Obana in the Superior Court of the State of

24 California in and for the County Contra Costa.  The matter is captioned *In re Crysti*

25 *Obana Revocable Trust*, Case No. P22-01991.  A copy of Crysti Obana's initial

26 pleading in the matter is attached hereto as ***Exhibit A***.  A copy of Crysti's

27 supplemental pleading in this matter is attached hereto as ***Exhibit B***.

28         2.      The first date upon which defendant Mary Obana-Lannon received a

374546*3941-001                        1
                    **NOTICE OF REMOVAL; UNDER 28 U.S.C. § 1441(a)**
                               **(FEDERAL QUESTION)**

copy of Crysti Obana's initial pleading was March 3, 2023, when defendant Mary Obana-Lannon was personally served a copy of said complaint and summons.  A copy of the summons is attached hereto as ***Exhibit C***.

**JURISDICTION**.

3.     This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1331, and is one which may be removed to this Court by defendant pursuant to the provision of 28 U.S.C. §1441(a) in that it arises under 29 U.S.C. §1132.  Plaintiff seeks, among other things, an order determining her rights to benefits payable from employer sponsored retirement and benefits plans governed exclusively by the Employment Retirement Income Security Act (*ERISA*), 29 U.S.C. §§1001 *et seq*., and currently in the possession of the plan administrator.

**CONSENT**

4.     All other defendants who have been served with the summons and complaint consent to this Notice of Removal.

**DIVISIONAL ASSIGNMENT**

5.     A substantial part of the events or omissions gifting rise to the claim occurred in Contra Costa County.  Under Local Rule 3-2(d) this matter should be assigned to the San Francisco or Oakland Divisions.

DATED:  March 16, 2023          HARTOG, BAER, ZABRONSKY & VERRIERE
                                A Professional Corporation


                                By:_____/S/_____
                                   ANDREW R. VERRIERE
                                   KEVIN P. O'BRIEN
                                   Attorneys for *Mary Obana,*
                                   *Mary Obana-Lannon, Stephen Obana,*
                                   *William Obana, M.D., and*
                                   *Kathryn Obana, M.D.*

# Exhibit A

**EXHIBIT A**
**TO**
**NOTICE OF REMOVAL; UNDER 28 U.S.C. § 1441(a)**
**(FEDERAL QUESTION)**

Electronically Filed Superior Court of CA County of Contra Costa 12/6/2022 3:18 PM By: T. Schrader, Deputy

Matthew B. Talbot (SBN: 245353)
Toni Coaston (SBN: 323608)
TALBOT LAW GROUP, PC
2033 N. Main St, Suite 750
Walnut Creek, CA. 94596
Tel: (925) 322-1795
Fax: (925) 407-8227
matthew@talbotlawpc.com
toni@talbotlawpc.com

Attorneys for Crysti Obana

Per local Rule, This case is assigned to
Judge George, Virginia M, for all purposes.

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF CONTA COSTA

In re:

THE CRYSTI OBANA REVOCABLE

TRUST

Case No.: P22-01991

**PETITION FOR RETURN OF TRUST ASSETS**

Date: TBD
Time:
Dept.:

K. Franza Giffen
Probate Referee
PO Box 70730
Pt. Richmond, CA 94807
(T) 510.215.7083 (F)510.215.7070
franza@giffenfs.com

Petitioner, Crysti Obana ("Petitioner") brings her Petition for Return of Assets; Breach of

Contract as follows:

## FACTS

1. Petitioner and John Obana ("Decedent") were married on August 14, 1999. They

remained married until Decedent's death on July 13, 2022.

**Start of the relationship and initial financial arrangement**

2. The relationship began in winter of 1996. Five months after their initial meeting,

Decedent moved to Nebraska to be with Petitioner for a brief period before persuading

her to leave her family and friends behind to move to California.

1

3. Shortly after her move to California, Petitioner learned that Decedent had accumulated $50,000 in debt which Petitioner believes was a result of Decedent paying the college tuition for both of his siblings as well as due to a failed business startup. Petitioner and Decedent combined their incomes to pay the rent on the apartment they were living in, pay daily living expenses, and pay off Decedent's $50,000 debt.

**Petitioner takes on the couple's living expenses**

4. In February 2009, after completing her college education. Petitioner began working as a nutritionist. The couple's financial roles in the relationship changed. Petitioner was responsible for paying the couple's rent for the room they were renting with a friend while Decedent was to save his income, which he made working as a financial planner, in order to fund the purchase of a home and plan for the couple's retirement.

5. In 2013, the couple moved into an apartment together. Petitioner's income was used to pay the required deposit and the monthly rent. Decedent was to continue saving his income with the goal of the couple buying a home and preparing for retirement.

**Decedent falls ill**

6. In the Spring of 2018, the couple learned that Decedent required a kidney transplant. Both Petitioner and Mary Obana-Lannon ("Obana-Lannon"), Decedent's sister, were tested to see if their kidney would be a match. Both were a match, however Obana-Lannon was a stronger match and, Petitioner is informed and believes that, she agreed to donate her kidney.

7. In Summer 2018, Petitioner began the necessary preparations for caring for Decedent and Obana-Lannon after the major surgery. This included renting a larger apartment in the same complex in order to have space for Obana-Lannon to recover. As Decedent was

undergoing dialysis, the task of moving was left entirely to Petitioner. Petitioner also paid the rent for the larger apartment from her income.

8. Shortly before the surgery was set to occur, Obana-Lannon backed out. Petitioner, knowing she was a match and caring for her husband's health donated her kidney to him on March 8, 2019.

9. Even after his kidney transplant, Decedent's health continued to be unstable. Petitioner frequently had to bring him to the emergency room for various ailments.

10. Due to Decedent's numerous health complaints, Petitioner began asking him about planning for the future if one of them were to die. Decedent repeatedly dismissed her concerns simply say "We don't need a trust or a will because, when I die, you will get all our assets" and other statements conveying the sentiment that she would be financially taken care of following his death. In March 2021, Decedent showed her their monthly retirement statements including their 401k plan, pension, death benefits, deferred compensation information, equity stock, equity cash, and other documents. The statements contained no information regarding beneficiary listings and Decedent advised Petitioner that she would be receiving those funds in the event that Decedent died.

11. During the final months of Decedent's life, Petitioner continued to be his primary and only care giver. She took him to the emergency room frequently, acted as his medical advocate, checked his blood sugars and pulse in the middle of the night, she paid for a medical alert system from her income as he refused to agree to hiring a caregiver and she needed to work in order to pay the rent on their apartment.

12. Decedent died on July 13, 2022. He died intestate.

**After Decedent's death**

13. Following Decedent's death, Petitioner was shocked to learn that Decedent had failed to follow through on his promise to ensure she would inherit all of their assets. After years of her helping Decedent pay off his debt, paying their rent for more than a decade, and being Decedent's sole caretaker at home, Petitioner was suddenly alone and without the funds that Decedent had been saving for them for twenty-three years.

14. The estate's assets, currently known to Petitioner, are as follows:

    a.  Retirement Account as Bank of America - $56,491.84

    b.  Retirement Account as Bank of America - $653.49

    c.  MetLife Life insurance - $450,000

    d.  Merrill Lynch 401k account - $688,000

    e.  Bank of America/Merrill Lynch Long-Term Cash Award - $188,000

    f.  Merrill Lynch Death Benefit Account - $1,470,000

    g.  Chase Bank Account - $161,000

    h.  Merrill Lynch CMA Account - $1,136,505.95

    i.  Merrill Lynch Retirement Account - $183,276

    j.  Bank of America Deferred Stock Account - $494,000

    k.  Bank of America Savings Account - $531,121.84

    l.  Bank of America HSA Account – unknown value

    m.  Fidelity Pension – unknown value

    n.  U.S. Bank Pension – unknown value

This list is comprised of assets currently known to Petitioner. If additional assets are located, Petitioner will supplement this information as necessary.

15. Petitioner is entitled to all of the property held by Decedent's estate. Petitioner is entitled to her community property interest in the estate assts. She is also entitled to Decedent's community property interest in the estate's assets as Decedent promised her that she would receive all of their assets upon his death. Additionally, Petitioner is entitled to any estate funds that are currently being held by any financial institutions, including, but not limited to, the financial institutions listed above.

16. Mary Obana ("Mary"), Obana-Lannon, Stephen Obana ("Stephen[1]"), Kathryn Obana ("Kathryn"), and William Obana ("William") are not entitled to any assets from Decedent. Furthermore, they must return any of Decedent's assets that they have wrongfully received.

17. On October 13, 2022, Petitioner, through counsel sent letters to Obana-Lannon, Stephen, William, and Kathryn requesting that they return any estate assets that they have received. The assets were not returned. The letters sent to Obana-Lannon, Stephen, William, and Kathryn are attached hereto as **Exhibit A.**

## **LEGAL ARGUMENT**

**Community Property**

18. California Family Code §760 provides as follows:

> *"Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."*

19. Decedent acquired funds during the marriage through his work as a financial advisor. Those funds are community property. He retained that community property to purchase a home and plan for the couple's retirement. Additionally, Decedent also used those funds

to acquire personal property. Petitioner is entitled to her community property interest in the personal property and any funds acquired during the marriage.

20. Petitioner did not consent to Decedent distributing any community assets through any means. Because Petitioner did not consent, Decedent had no power to transfer her community property interest. See Estate of Wilson (Cal. Ct. App. 1986) 183 Cal.App.3d 67, 71. Probate Code §5201(a) provides, in relevant part:

> "In a proceeding to set aside a nonprobate transfer of community property on death made pursuant to a provision for transfer of the property executed by a married person without the written consent of the person's spouse, the court shall set aside the transfer as to the nonconsenting spouse's interest in the property".

21. The provisions of Probate Code §5021(a) apply to each individual asset, regardless of the total portion of the Estate inherited by the surviving spouse. Estate of Miramontes-Najera (2004) 118 Cal. App. 4th 750, 759. Regardless of how much Petitioner inherits from the Estate, Decedent still could not give away more than his half of the community property annuity. See id. at 760.

22. California Probate Code §856 provides the Court the authority to make this Order:

> ...[I]f the court is satisfied that a conveyance, transfer, or other order should be made, the court shall make an order authorizing and directing the personal representative or other fiduciary, or the person having title to or possession of the property, to execute a conveyance or transfer to the person entitled thereto, or granting other appropriate relief.

23. Mary, Obana-Lannon, Stephen, William, and Kathryn have received distributions from Decedent's estate. These distributions are improper. The distributions consist of either funds acquired during the marriage or funds from insurance policies which were paid for by community property funds.

24. Petitioner is entitled to her community property interest in the various funds that have been distributed to Obana-Lannon, Stephen, William, and Kathryn.

25. The Court should make an order confirming Petitioner's share of the community property in the estate

**Breach of Contract**

26. Decedent was obligated to create a will or a devise prior to his death.

27. California Probate Code §21700, provides:

> "*(a) A contract to make a will or devise or other instrument, or not to revoke a will or devise or other instrument, or to die intestate, if made after the effective date of this statute, can be established only by one of the following:*
> *(1) Provisions of a will or other instrument stating the material provisions of the contract.*
> *(2) An expressed reference in a will or other instrument to a contract and extrinsic evidence proving the terms of the contract.*
> *(3) A writing signed by the decedent evidencing the contract.*
> *(4) Clear and convincing evidence of an agreement between the decedent and the claimant or a promise by the decedent to the claimant that is enforceable in equity.*
> *(5) Clear and convincing evidence of an agreement between the decedent and another person for the benefit of the claimant or a promise by the decedent to another person for the benefit of the claimant that is enforceable in equity.*"

28. Here, the fourth factor is present. There is clear and convincing evidence of an agreement between Petitioner and Decedent to create a will or a devise.

29. Throughout their marriage, Petitioner used her income to pay for the couple housing and other expenses. She also assisted Decedent with paying off his debt and provide a substantial amount of care for him in the final years of his life, including donating her kidney to him, providing medical care at home, and frequently bringing Decedent to the emergency room for further medical care when needed.

30. Decedent and Petitioner had an agreement regarding their financial lives. Decedent was saving his income and promised to use that money to buy them a house and fund their joint retirement. His income was to be used to provide for both of them in retirement and his income saving was for the benefit of both of them. Petitioner's role was to ensure that

the couple had a place to live, and their expenses were met for the twenty-three years they shared a life together. She was unable to build any savings throughout the marriage because she was providing for both of them with the understanding that Decedent's income would support both of them during their retirement.

31. Once Decedent became seriously ill, Petitioner became worried about the likelihood that the couple's decades long plan was truly reasonable. She asked him repeatedly about creating an estate plan. He always advised her that she would be taken care of in the event of his death and that she would receive all of his assets.

32. Decedent showed Petitioner their financial documents and told her that he had made sure she would be taken care of and receive all of the couple's assets following his death. Decedent was a financial planner. Petitioner believed that Decedent knew how to plan for both the couple's joint future and she believed that he had created a plan for her to receive all of the couple's assets if he died. She deferred the creation of the plan to him due to his profession and his repeated promises that she would receive all of the couple's assets in the even of his untimely death.

33. Petitioner had no reason to distrust her husband's promises. Petitioner relied on Decedent's promise and believed that he had taken all necessary steps to ensure she would be his sole beneficiary and took no further steps to secure herself financially in the event of her husband's death.

34. Petitioner did not learn of Decedent's failure to keep his promise until after he was dead.

35. Distribution of Decedent's assets to any person except Petitioner would be inequitable.

36. Petitioner paid the couple's rent and other living expenses for twenty-three years. She provided a substantial amount of medical care for him, including donating her kidney to him so he could stop dialysis, and helped pay off his debt.

37. Decedent held on to all of the money that he promised to save for the both of them. Since Petitioner gave everything to their marriage and supporting the couple, after Decedent's death, she was left with nothing of her own. After twenty-eight years, this is certainly an inequitable result.

38. The only equitable result is to effectuate Decedent's promise to Petitioner. Pursuant to Decedent's promises, Petitioner should receive Decedent's entire estate.

39. For twenty-three years, Petitioner paid the couple's expenses in reliance on Decedent's promise that the savings he was maintaining was for the couple's future. After Decedent's health worsened and Petitioner was worried about the viability of their plans, Petitioner relied on Decedent's promises that she was to inherit all of their assets in the event of his death.

40. Petitioner's reliance on Decedent's promises through out their marriage necessitates the use of equity to ensure that Decedent's promises are fulfilled.

**Bad Faith**

41. California Probate Code §859 authorizes additional remedies should the Court believe that Respondent acted in bad faith in this matter.  Specifically, §859 authorizes the Court to order double damages and reasonable attorney's fees:

> *"If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to a conservatee, a minor, an elder, a dependent adult, a trust, or the estate of a decedent, or has taken, concealed, or disposed of the property by the use of undue influence in bad faith or through the commission of elder or dependent adult financial abuse, as defined in Section 15610.30 of the Welfare and Institutions Code, the person shall be liable for twice the value of the*

*property recovered by an action under this part. In addition, except as otherwise required by law, including Section 15657.5 of the Welfare and Institutions Code, the person may, in the court's discretion, be liable for reasonable attorney's fees and costs. The remedies provided in this section shall be in addition to any other remedies available in law to a person authorized to bring an action pursuant to this part."*

42. Furthermore, liability under §859 is a punishment for culpable misconduct; its intent is to deter specific misconduct. See *Estate of Ashlock*, Case No. F078083, California Court of Appeal, Fifth Appellate District (issued March 3, 2020), certified for partial publication, pages 30-31. It is a separate and antecedent obligation from the duty to return the property under California Probate Code §856. Id. at p. 31 ("*[T]he person shall be liable for twice the value of the property recovered by an action under this part.*") See also *Kerley v. Weber*, 27 Cal.App.5th 1187, 1198 (*repayment of stolen funds pursuant to a criminal restitution order does not reduce a wrongdoer's liability under §859 for the same misconduct.*)

43. Thus, under §859, Mary, Obana-Lannon, Stephen, William, and Kathryn are liable for "twice the value of the property" misappropriated, even if recovered via §856. Here, Obana-Lannon, Stephen, William, and Kathryn are liable for twice the value of Petitioner's community property interest in the property distributed to them.

44. As such, Obana-Lannon, Stephen, William, and Kathryn have acted in bad faith. Petitioner requests the additional remedies available pursuant to §859, including double damages and attorney fees, to be determined according to proof.

**CONCLUSION**

45. Respondent is in possession of and attempting dispose of Petitioner's community property interest in the Trust property. Petitioner's community property interest must be distributed to her.

46. Respondent is liable for his bad faith actions for his refusal to distribute Petitioner's community property interest.

**NOTICE**

10

47. No person has filed a request for special notice.

48. By executing this document, Petitioner verifies that the attached service list is an accurate list of all of the names and addresses of all persons entitled to notice.

**WHEREFORE, Petitioner requests an Order that:**

49. All assets of the estate of John Obana be transferred to the Crysti Obana Revocable Trust.

50. Mary Obana, Mary Obana-Lannon, Stephen Obana, William Obana and Kathryn Obana be ordered to return any assets that they have received from the estate of John Obana to the Crysti Obana Revocable Trust.

51. Mary Obana, Mary Obana-Lannon, Stephen Obana, William Obana and Kathryn Obana are ordered to pay double damages and attorney fees, the amount to be determined by proof.

52. All assets of the estate that were not distributed and are currently being held by financial institutions be transferred to the Crysti Obana Revocable Trust.

53. For other relief that the Court considers proper.

TALBOT LAW GROUP, PC

Dated: 12/6/22

Matthew Talbot
Attorney for Crysti Obana

## VERIFICATION

I, Crysti Obana, declare:

I am the Petitioner herein.  I have read the foregoing **PETITION FOR RETURN OF TRUST ASSETS** and know the contents thereof; that the same is true of my own knowledge, except as to the matters which are therein stated on our information and belief, and as to those matters I believe to be true.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Dated: 11/21/2022

*Crysti Obana*
Crysti Obana

12

# EXHIBIT A

# Talbot Law Group, P.C.

October 13, 2022

Mary Obana-Lannon
P.O. Box 2591
Orleans MA 02653

      Re:    Estate of John Obana

Dear Ms. Obana-Lannon:

      This firm represents Crysti Obana, wife John Obana. As you are presumably aware, John unfortunately passed away on July 13, 2022.

      John appears to have breached a contract to make a will. If not for this breach, all of the funds in John's accounts would be distributed to Crysti rather than to any other beneficiary.

      In addition, it has come to our attention that John may have placed inappropriate beneficiary listings on certain bank accounts and/or insurance policies. In so doing, John may have attempted to distribute more than his community property share of the funds, even in the absence of any contract to make a will.

      We are in the process of filing legal action to recover the funds that are due to Crysti. We intend to file both a civil complaint and a probate petition to ensure that all funds are recovered.

      If you have received any funds from any bank or insurer as a beneficiary of John Obana, please return such funds to my office no later than October 26, 2022. If you have any questions regarding this matter, please do not hesitate to contact me.

Very Truly Yours,

Emily Blake

EB

2033 N. Main St. Suite 750
Walnut Creek, CA 94596
P: (925) 322-1795
F: (925) 407-8227
matthew@talbotlawpc.com | emily@talbotlawpc.com
mark@talbotlawpc.com | emilyblake@talbotlawpc.com | toni@talbotlawpc.com

# Talbot Law Group, P.C.

October 13, 2022

Stephen Obana
148 Oakdale St.
Redwood City CA 94062

Re:    Estate of John Obana

Dear Mr. Obana:

This firm represents Crysti Obana, wife John Obana.  As you are presumably aware, John unfortunately passed away on July 13, 2022.

John appears to have breached a contract to make a will.  If not for this breach, all of the funds in John's accounts would be distributed to Crysti rather than to any other beneficiary.

In addition, it has come to our attention that John may have placed inappropriate beneficiary listings on certain bank accounts and/or insurance policies.  In so doing, John may have attempted to distribute more than his community property share of the funds, even in the absence of any contract to make a will.

We are in the process of filing legal action to recover the funds that are due to Crysti.  We intend to file both a civil complaint and a probate petition to ensure that all funds are recovered.

If you have received any funds from any bank or insurer as a beneficiary of John Obana, please return such funds to my office no later than October 26, 2022.  If you have any questions regarding this matter, please do not hesitate to contact me.

Very Truly Yours,

Emily Blake

EB

2033 N. Main St. Suite 750
Walnut Creek, CA 94596
P: (925) 322-1795
F: (925) 407-8227
matthew@talbotlawpc.com | emily@talbotlawpc.com
mark@talbotlawpc.com | emilyblake@talbotlawpc.com | toni@talbotlawpc.com

# Talbot Law Group, P.C.

October 13, 2022

William Obana MD
2848 Oahu Ave.
Honolulu HI 96822

     Re:   Estate of John Obana

Dear Mr. Obana:

     This firm represents Crysti Obana, wife John Obana. As you are presumably aware, John unfortunately passed away on July 13, 2022.

     John appears to have breached a contract to make a will. If not for this breach, all of the funds in John's accounts would be distributed to Crysti rather than to any other beneficiary.

     In addition, it has come to our attention that John may have placed inappropriate beneficiary listings on certain bank accounts and/or insurance policies. In so doing, John may have attempted to distribute more than his community property share of the funds, even in the absence of any contract to make a will.

     We are in the process of filing legal action to recover the funds that are due to Crysti. We intend to file both a civil complaint and a probate petition to ensure that all funds are recovered.

     If you have received any funds from any bank or insurer as a beneficiary of John Obana, please return such funds to my office no later than October 26, 2022. If you have any questions regarding this matter, please do not hesitate to contact me.

Very Truly Yours,

Emily Blake

EB

2033 N. Main St. Suite 750
Walnut Creek, CA 94596
P: (925) 322-1795
F: (925) 407-8227
matthew@talbotlawpc.com | emily@talbotlawpc.com
mark@talbotlawpc.com | emilyblake@talbotlawpc.com | toni@talbotlawpc.com

# Talbot Law Group, P.C.

October 13, 2022

Kathryn Obana MD
24 Woodsworth Avenue
Redwood City CA 94062

   Re: Estate of John Obana

Dear Ms. Obana:

  This firm represents Crysti Obana, wife John Obana. As you are presumably aware, John unfortunately passed away on July 13, 2022.

  John appears to have breached a contract to make a will. If not for this breach, all of the funds in John's accounts would be distributed to Crysti rather than to any other beneficiary.

  In addition, it has come to our attention that John may have placed inappropriate beneficiary listings on certain bank accounts and/or insurance policies. In so doing, John may have attempted to distribute more than his community property share of the funds, even in the absence of any contract to make a will.

  We are in the process of filing legal action to recover the funds that are due to Crysti. We intend to file both a civil complaint and a probate petition to ensure that all funds are recovered.

  If you have received any funds from any bank or insurer as a beneficiary of John Obana, please return such funds to my office no later than October 26, 2022. If you have any questions regarding this matter, please do not hesitate to contact me.

     Very Truly Yours,

     Emily Blake

EB

2033 N. Main St. Suite 750
Walnut Creek, CA 94596
P: (925) 322-1795
F: (925) 407-8227
matthew@talbotlawpc.com | emily@talbotlawpc.com
mark@talbotlawpc.com | emilyblake@talbotlawpc.com | toni@talbotlawpc.com

# Talbot Law Group, P.C.

October 13, 2022

Mary Obana
Montecito Ave Unit 225
Mountain View, Ca 94043

      Re:    Estate of John Obana

Dear Ms. Obana:

      This firm represents Crysti Obana, wife John Obana. As you are presumably aware, John unfortunately passed away on July 13, 2022.

      John appears to have breached a contract to make a will. If not for this breach, all of the funds in John's accounts would be distributed to Crysti rather than to any other beneficiary.

      In addition, it has come to our attention that John may have placed inappropriate beneficiary listings on certain bank accounts and/or insurance policies. In so doing, John may have attempted to distribute more than his community property share of the funds, even in the absence of any contract to make a will.

      We are in the process of filing legal action to recover the funds that are due to Crysti. We intend to file both a civil complaint and a probate petition to ensure that all funds are recovered.

      If you have received any funds from any bank or insurer as a beneficiary of John Obana, please return such funds to my office no later than October 26, 2022. If you have any questions regarding this matter, please do not hesitate to contact me.

Very Truly Yours,

Emily Blake

EB

2033 N. Main St. Suite 750
Walnut Creek, CA 94596
P: (925) 322-1795
F: (925) 407-8227
matthew@talbotlawpc.com | emily@talbotlawpc.com
mark@talbotlawpc.com | emilyblake@talbotlawpc.com | toni@talbotlawpc.com

**Service list**

Mary Obana
Montecito Ave Unit 225
Mountain View, Ca 94043

Mary Obana-Lannon
P.O. Box 2591
Orleans, MA 02653

Stephen Obana
148 Oakdale St.
Redwood City, CA 94062

William Obana MD
2848 Oahu Ave.
Honolulu, HI 96822

Kathryn Obana MD
24 Woodsworth Avenue
Redwood City, CA 94062

# Exhibit B

**EXHIBIT B**
**TO**
**NOTICE OF REMOVAL; UNDER 28 U.S.C. § 1441(a)**
**(FEDERAL QUESTION)**

1  Matthew B. Talbot (SBN: 245353)
   Toni Coaston (SBN: 323608)
2  TALBOT LAW GROUP, PC
   2033 N. Main St, Suite 750
3  Walnut Creek, CA. 94596
   Tel: (925) 322-1795
4  Fax: (925) 407-8227
   matthew@talbotlawpc.com
5  toni@talbotlawpc.com

6  Attorneys for Crysti Obana

7                    SUPERIOR COURT OF CALIFORNIA

8                      COUNTY OF CONTA COSTA

9

10                              )  Case No.: P22-01991
    In re:                      )
11                              )  **SUPPLEMENT TO PETITION FOR**
    THE CRYSTI OBANA REVOCABLE  )  **RETURN OF TRUST ASSETS**
12                              )
    TRUST                       )
13                              )
                                )
14                              )
                                )
15  _____  )

16         Petitioner, Crysti Obana ("Petitioner") supplements her Petition for Return of Trust

17  Assets as follows:

18      1.  Following the filing of the Petition for Return of Trust Assets, Petitioner was able to

19          confirm the estate assets currently being retained by Bank of America which it intends to

20          distribute at a future date.

21      2.  In a letter dated December 16, 2022, Bank of America confirmed the exact amounts held

22          in the accounts at the time of John Obana's death. A copy of the letter, without the

23          enclosures, is attached hereto as **Exhibit A.**

24

25

                                        1

3. Below is updated information containing the exact amount of the estate's assets currently being held by Bank of America:

    a. Bank of America Deferred Compensation Plan Pre 2015 - $153,002.21

    b. Bank of America Deferred Compensation Plan Post 2014- $352,427.05

    c. Merrill Lynch Equity/LTI - $324,544.90

    d. Merrill Lynch Death Benefit Account - $1,470,521.12

    e. Pension Restoration plan (previously listed as letter b "Retirement Account as Bank of America) - $661.08

4. Additional disputed estate assets are currently being held by other individuals and institutions. This supplement solely addresses the assets that Bank of America has confirmed it is holding.

TALBOT LAW GROUP, PC

Dated: 1/6/23

Matthew Talbot
Attorney for Crysti Obana

2

## VERIFICATION

I, Crysti Obana, declare:

I am the Petitioner herein.  I have read the foregoing **SUPPLEMENT TO PETITION FOR RETURN OF TRUST ASSETS** and know the contents thereof; that the same is true of my own knowledge, except as to the matters which are therein stated on our information and belief, and as to those matters I believe to be true.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Dated:  1/6/2023

Crysti Obana

# EXHIBIT A

**BANK OF AMERICA** 

December 16, 2022

Ms. Crysti Obana
c/o Ms. Emily Blake
Talbot Law Group, P.C.
2033 N. Main St., Ste 750
Walnut Creek, CA 94596

      RE:    John Obana Benefits – Findings and Plan Records

Dear Ms. Blake:

This letter is in response to your letter dated October 5, 2022 (copy enclosed) regarding payment of John Obana's benefits and his beneficiary listings on various retirement and compensation plans sponsored by Bank of America (collectively, the "Plans"). The purpose of this letter is to inform you of the various Plans' findings and records, but we caution that these are not claim determinations at this point because we do not view your communications to date as a claim for benefits.

Specifically, this letter outlines Mr. Obana's Plans for which there is a death benefit, the approximate death benefit amounts associated with those Plans, the designated beneficiaries to those Plans (and associated percentages), and dates the beneficiaries were designated. This letter further provides what Crysti Obana (referred to herein as Crysti) is due from the Plans in accordance with the applicable beneficiary designations.

If Crysti disagrees with the beneficiary designations and the distributions to the listed beneficiaries, she can file a claim with the Bank of America Claims Review Committee (the "Claims Committee") and/or the Associate Equity Escalation Committee for the Merrill Lynch Equity/LTI Plan. Details about these processes are provided below.

Please note that this letter is not an admission that any benefits are owed to any individual beyond those set forth in the Plan documents and records. The Bank will continue to monitor its obligations to pay proper beneficiaries timely, balancing such obligations with ensuring that all claimants have a rightful opportunity to be heard.

**Background Relevant to the Matter**

Mr. Obana was a Bank of America employee who, upon death, had death benefits owed from several Bank and Merrill Lynch employee benefit/retirement plan accounts. Mr. Obana designated his wife, Crysti, and his mother, Mary Obana (referred to herein as "Mary"), as beneficiaries on each of those accounts (in varying percentages). We believe there may be a future dispute as to these percentages with respect to some of the retirement plans, and thus, we set forth our findings on these Plans below.

In contrast, we understand that there is no dispute with respect to the 50% equal shares paid to Crysti and Mary under the Bank of America Associate Basic Life Insurance Plan (the "Life Insurance Plan"). Accordingly, those


**BANK OF AMERICA**

Plan records are not addressed below. Please note, however, and as addressed below, while an accounting of the Life Insurance Plan is not provided, the beneficiary designations set forth in the Life Insurance Plan are relevant for the purposes of determining the beneficiaries of the Merrill Lynch Death Benefit Plan.

**Applicable Findings for Plans**

### The Bank of America 401(k) Plan

The Bank of America 401(k) Plan (the "401(k) Plan") records (enclosed here) reflect that Mr. Obana designated Crysti as his 100% beneficiary. This beneficiary designation was made on October 20, 2014. The value of the 401(k) Plan is $698,782.87 as of November 30, 2022. Notably, even absent an election, under the terms of the 401(k) Plan, the benefit goes entirely to the spouse, Crysti, unless there is a written and notarized consent from the spouse for an alternate designation.

Accordingly, the Bank intends to pay Crysti the entire 401(k) Plan account, upon her election to be paid. The Bank intends to make this payment consistent with Crysti's election and pursuant to the terms of the Plan. Please see the 401(k) Plan SPD for more details about payment options.

### Bank of America Deferred Compensation Plan (inclusive of any previous Merrill Lynch Deferred Compensation Plan accounts)

The Bank of America Deferred Compensation Plan (the "DCP") records (enclosed here) reflect that Mr. Obana designated Crysti as 25% beneficiary, and Mary as 75% beneficiary. These beneficiary designations were made on March 7, 2017. Mr. Obana had two separate benefits under the DCP. The value of the Pre-2015 DCP account is $153,002.21 and the value of the post-2014 DCP account is $352,427.05, both valued as of November 30, 2022. Unlike the 401(k) Plan, Mr. Obana was authorized to make any beneficiary election he desired without spousal consent.

The Bank intends to pay these benefits in accordance with the Plan beneficiary designations as set forth above. Crysti's 25% interest is valued at $38,250.55 for the Pre-2015 DCP and $88,106.76 for the post-2014 portion of the DCP account. The Bank intends to make these payments on or about on or about February 15, 2023, unless the Bank determines, in its sole and absolute discretion, that more time is required to determine or process the proper payment.

### Merrill Lynch Equity/LTI

The Merrill Lynch Equity/LTI Plan (The "E/LTI Plan") records (enclosed here) reflect that Mr. Obana designated Crysti as 25% beneficiary, and Mary as 75% beneficiary. This beneficiary designation was made on March 7, 2017. The value of the E/LTI Plan is $324,544.90 as of November 30, 2022.

The Bank intends to pay these benefits in accordance with the Plan beneficiary designations as set forth above. Crysti's 25% interest is valued at $81,136.23 for the E/LTI Plan. The Bank intends to make this payment on or about on or about February 15, 2023, unless the Bank determines, in its sole and absolute discretion, that more time is required to determine or process the proper payment.

**BANK OF AMERICA** 

### *Merrill Lynch Death Benefit*

In the Merrill Lynch Death Benefit Plan (the "MLDB Plan"), Plan records (enclosed here) reflect that Mr. Obana designated Crysti as 50% beneficiary, and Mary as 50% beneficiary. It is important to note that beneficiary designations under the MLDB Plan follow the rules as set forth in the Life Insurance Plan which designates Crysti and Mary as equal 50% beneficiaries. Specifically, the MLDB Plan defines "Beneficiary" in Article I, Section 1.01 as:

> *"Beneficiary" means the beneficiary properly designated under the terms of the Bank of America Associate Basic Life Insurance Plan covering the Participant and in effect on the date of the Participant's death. If no beneficiary is properly designated under the Bank of America Associate Basic Life Insurance Plan, any benefits payable under this Plan shall be paid to the Participant's estate.*

The value of the MLDB Plan is $1,470,521.12 as of November 30, 2022.

The Bank intends to pay these benefits in accordance with the Plan beneficiary designations as set forth above. Crysti's 50% interest is valued at $735,260.56 for the MLDB Plan. (We assume there is no dispute for this benefit based on the lack of dispute regarding the Life Insurance Plan.). The Bank intends to make this payment on or about February 15, 2023, unless the Bank determines, in its sole and absolute discretion, that more time is required to determine or process the proper payment.

### *The Bank of America Pension Plan and Pension Restoration Plan*

The Bank of America Pension Plan (the "Pension Plan") records reflect that Mr. Obana designated Crysti as 100% beneficiary. The Bank of America Pension Restoration Plan (the "Pension Restoration Plan") reflect that Mr. Obana designated Mary as 100% beneficiary.

Accordingly, the Plans intend to pay 100% of the Pension Plan benefit to Crysti, which is $57,215.64 in a lump sum (or other available optional form if elected), and 100% of the Pension Restoration Plan benefit to Mary, which is $661.08 in a lump sum. The Bank intends to make the Pension Plan payment consistent with Crysti's election and pursuant to the terms of the Plan. Please see the Pension Plan SPD for more details on available payment options. The Bank intends to pay the Pension Restoration Plan benefit on or about February 15, 2023, unless the Bank determines, in its sole and absolute discretion, that more time is required to determine or process the proper payment.

### Claims Procedure

As stated above, please be aware that the Bank intends to make certain payments discussed above on or about February 15, 2023, unless the Bank determines, in its sole and absolute discretion, that more time is required to determine the proper payment (such as, for example, if the Bank determines there are valid competing claims). Accordingly, to ensure that any claim is reviewed and adjudicated in accordance with the procedures set forth below, we suggest you file any claim in advance of the anticipated payment date. **If Crysti does not disagree with the determinations above, she does not need to file a claim (but should make payment elections under the 401(k) Plan and Pension Plan).**

 **BANK OF AMERICA**

Page 4 of 5

If Crysti disagrees with any of the findings outlined above with respect to the ERISA plans (e.g., the 401(k) Plan, the Pension Plan, the DCP (ERISA top-hat plan), and the MLDB Plan), she may make a claim for benefits under the Plan(s) by filing a written claim, identified as a claim for benefits with the Claims Committee at the following address:

> Bank of America Claims Review Committee
> NC1-021-09-03
> 401 N. Tyron Street
> Charlotte, NC 28255

If applicable, Crysti's claim generally is processed within 90 days after it is received. Special circumstances may require an extension for processing the claim. If this happens, Crysti will be notified that additional time, not to exceed another 90 days, is required to process the claim.

If Crysti's claim is approved or denied, she will be notified in writing. This written notice will tell Crysti the reason for the approval or denial. It also will point out what additional information is needed, if any, that could change the decision to deny the claim. Finally, the notice will tell Crysti how she can have the decision reviewed.

As explained in the SPD(s), these claims procedures are generally a precondition to any lawsuit. These procedures are described in more detail in the applicable plan's Summary Plan Description.

With respect to the E/LTI Plan, if you disagree with the above, you can – but are not required – to request a claim form from the Associate Equity Escalation Committee:

> Bank of America
> Associate Equity Escalation Committee
> NC1-021-08-03
> 401 N. Tryon Street
> Charlotte, NC 28255

We hope this letter is helpful. Please let us know if you have any questions.

Sincerely,


Global Human Resources
Bank of America Corporation

 **BANK OF AMERICA**

Page 5 of 5

Enclosures:
1. Ms. Blake's October 5, 2022 Letter
2. The Bank of America 401(k) Plan: (i) Beneficiary Designation Form; and (ii) Summary Plan Description
3. Bank of America Deferred Compensation Plan: (i) Beneficiary Designation Forms; and (ii) Plan Documents.
4. Merrill Lynch Equity/LTI Plan Beneficiary Designation Form
5. Merrill Lynch Death Benefit Plan: (i) Bank of America Associate Basic Life Insurance Plan Beneficiary Designation Form; and (ii) Plan Document
6. The Bank of America Pension Plan: (i) Beneficiary Designation Form; and (ii) Summary Plan Description
7. The Bank of America Pension Restoration Plan (i) Beneficiary Designation Form; and (ii) Summary Plan Description

**PROOF OF SERVICE**

I am a citizen of the United States; I am employed in the County of Contra Costa; I am over the age of eighteen years and not a party to the above action; my business address is 2033 N. Main St., Suite 750, Walnut Creek, CA. 94596 and on this day I served:

**SUPPLEMENT TO PETITION FOR RETURN OF TRUST ASSETS**

__x__ By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Walnut Creek, CA, addressed as set forth below.

_____ By personally delivering a true copy thereof to the person and at the address set forth below.

_____ Via Facsimile to all counsel listed below.

_____ Via overnight mail with postage thereon fully prepaid at Walnut Creek, CA, addressed as set forth below.

See Attached Service List

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at Walnut Creek, CA, on January 6, 2023.

_Toni Coaston_

Toni N. Coaston

## Service list

Mary Obana
Montecito Ave Unit 225
Mountain View, Ca 94043

Mary Obana-Lannon
P.O. Box 2591
Orleans, MA 02653

Stephen Obana
148 Oakdale St.
Redwood City, CA 94062

William Obana MD
2848 Oahu Ave.
Honolulu, HI 96822

Kathryn Obana MD
24 Woodsworth Avenue
Redwood City, CA 94062

# Exhibit C

**EXHIBIT C**
**TO**
**NOTICE OF REMOVAL; UNDER 28 U.S.C. § 1441(a)**
**(FEDERAL QUESTION)**

A TRUE COPY ATTEST
Richard J. Coletti
Constable / Process Server &
Disinterested Person

Electronically Filed Superior Court of CA County of Contra Costa 12/15/2022 4:56 PM By: N. McCallister-Vila, Deputy

DE-115/GC-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 245353 | FOR COURT USE ONLY |
|---|---|---|
| NAME: Matthew B. Talbot | | |
| FIRM NAME: Talbot Law Group P.C. | | |
| STREET ADDRESS: 2033 N Main St. Ste. 750 | | |
| CITY: Walnut Creek    STATE: CA    ZIP CODE: 94596 | | |
| TELEPHONE NO.: 925-322-1795    FAX NO.: 925-407-8227 | | |
| EMAIL ADDRESS: matthew@talbotlawpc.com | | |
| ATTORNEY FOR (name): Crysti Obana | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Contra Costa |
|---|
| STREET ADDRESS: 725 Court Street |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Martinez 94553 |
| BRANCH NAME: Wakefield Taylor Courthouse |

| ESTATE OF (name): ☐    [✓] IN THE MATTER OF (name): | |
|---|---|
| The Crysti Obana Revocable Trust | |
| ☐ DECEDENT   [✓] TRUST   ☐ CONSERVATEE   ☐ MINOR | |
| **NOTICE OF HEARING ON** | CASE NUMBER: |
| **PETITION TO DETERMINE CLAIM TO PROPERTY** | P22-01991 |

*A petition has been filed asking the court to determine a claim to the property identified in 3, and a hearing on the petition has been set. Please refer to the petition for more information.*

*If you have a claim to the property described in 3, you may attend the hearing and object or respond to the petition. If you do not want to attend the hearing, you may also file a written response before the hearing.*

*If you do not respond to the petition or attend the hearing, the court may make orders affecting ownership of the property without your input.*

1. NOTICE is given that (name): Crysti Obana
   (fiduciary or representative capacity, if any):
   has filed a petition entitled (state complete title): Petition for Return of Trust Assets
   under Probate Code section 850 asking for a court order determining a claim or claims to the property described in 3.

2. A HEARING on the petition will be held as follows:

   Name and address of court if different from above:

   | Hearing Date | → Date: 03/14/2023    Time: 9:00 am |
   |---|---|
   | | Dept.: 30    Room: |

3. The property that is the subject of the petition is (describe each item of real or personal property; for real property—i.e., land or buildings—give the street address or, if none, describe the property's location and give the assessor's parcel number):
   Retirement Account as Bank of America - $56,491.84; Retirement Account as Bank of America - $653.49; MetLife Life Insurance - $450,000; Merrill Lynch 401k account - $688,000; Bank of America/Merrill Lynch Long-Term Cash Award - $188,000; Merrill Lynch Death Benefit Account - $1,470,000; Chase Bank Account - $161,000; Merrill Lynch CMA Account - $1,136,505.95; Merrill Lynch Retirement Account - $183,276; Bank of America Deferred Stock Account - $494,000 ; Bank of America Savings Account - $531,121.84; Bank of America HSA Account – unknown value ; Fidelity Pension – unknown value ; U.S. Bank Pension – unknown value

   ☐ Continued on Attachment 3.

   Check 4 only if the petition seeks the additional relief described.

4. [✓] In addition to seeking to recover the property described in 3, the petition also alleges and seeks relief for bad faith conduct, undue influence in bad faith, or elder or dependent adult financial abuse. The petition describes these allegations in detail. Based on the allegations, the petition seeks to recover twice the value of the property described in 3
   [✓] and requests that the court award attorney's fees and costs to the petitioner. (Prob. Code, § 859.)

**Requests for Accommodations**
Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the hearing. Contact the clerk's office or go to www.courts.ca.gov/forms for Request for Accommodations by Persons With Disabilities and Response (form MC-410). (Civ. Code, § 54.8.)

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
DE-115/GC-015 [New January 1, 2020]

**NOTICE OF HEARING ON**
**PETITION TO DETERMINE CLAIM TO PROPERTY**

Probate Code, §§ 851, 1215, 1220, 1460, 17203
www.courts.ca.gov

DE-115/GC-015

| | | CASE NUMBER: |
|---|---|---|
| ☐ ESTATE OF  ☑ IN THE MATTER OF *(name):*<br>The Crystl Obana Revocable Trust<br>☐ DECEDENT  ☑ TRUST   ☐ CONSERVATEE   ☐ MINOR | | P22-01991 |

### PROOF OF SERVICE BY MAIL*

1. I am over the age of 18 and not a party to this cause. I am a resident of or employed in the county where the mailing occurred.

2. My residence or business address is *(specify):*
   2033 N. Main St. Ste. 750
   Walnut Creek, CA 94596

3. I served the foregoing *Notice of Hearing on Petition to Determine Claim to Property* on each person named below by enclosing a copy in an envelope addressed as shown below AND

   a. ☐ depositing the sealed envelope on the date and at the place shown in item 4 with the U.S. Postal Service with the postage fully prepaid.

   b. ☑ placing the envelope for collection and mailing on the date and at the place shown in item 4 following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in a sealed envelope with postage fully prepaid.

4. a. Date mailed: 12/15/2022
   b. Place mailed *(city, state):* Walnut Creek, CA

5. ☑ I served with the *Notice of Hearing on Petition to Determine Claim to Property* a copy of the petition referred to in the Notice.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 12/15/22

Toni Coaston
_____
(TYPE OR PRINT NAME)

▶ *Toni Coaston*
_____
(SIGNATURE)

### NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED

| | Name | Address *(street & number, city, state, zip code)* |
|---|---|---|
| 1. | See attached service list | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |

☐ Continued on an attachment. *(You may use Attachment to Notice of Hearing Proof of Service by Mail, form DE-120(MA)/GC-020(MA), for this purpose.)*

* Do not use this form to prove personal or electronic service. You may use form DE-120(P) or GC-020(P) to prove personal service.

DE-115/GC-015 [New January 1, 2020]

### NOTICE OF HEARING ON
### PETITION TO DETERMINE CLAIM TO PROPERTY

Page 2 of 2

**Service list**

Mary Obana
Montecito Ave Unit 225
Mountain View, Ca 94043

Mary Obana-Lannon
P.O. Box 2591
Orleans, MA 02653

Stephen Obana
148 Oakdale St.
Redwood City, CA 94062

William Obana MD
2848 Oahu Ave.
Honolulu, HI 96822

Kathryn Obana MD
24 Woodsworth Avenue
Redwood City, CA 94062

*In The Matter of: The Crysti Obana Revocable Trust*

### PROOF OF SERVICE

I, the undersigned, declare as follows:

1.      At the time of service, I was over 18 years of age and not party to this action.

2.      My business address is 4 Orinda Way, Suite 200-D, Orinda, CA 94563.

3.      The fax number from which I served the documents is *(complete if service was by fax)*: ___-___-____.

4.      My electronic service address is *(complete if service was by e-mail)*: ctallent@hbzvlaw.com.

5.      On March 16, 2023, I served the following documents:

**NOTICE OF REMOVAL; UNDER 28 U.S.C. § 1441(a)**

**(FEDERAL QUESTION)**

6.      I served the documents on the person or persons below, as follows: ***Attorney for Crysti Obana***

Matthew B. Talbot
Toni Coaston
Talbot Law Group P.C.
2033 N. Main St., Suite 750
Walnut Creek, CA 94596
 E-mail: matthew@talbotlawpc.com
               toni@talbotlawpc.com

7.      The documents were served by the following means:

a.      ☐      **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 6. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the  attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an  individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For  a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

b. ☐ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 6 and *(specify one)*:

    (1) ☐ deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2) ☐ placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence  is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal  Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at <u>Orinda, California</u>.

c. ☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier  and addressed to the persons at the addresses in item 6. I placed the envelope or package for collection and overnight  delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d. ☒ **By electronic service:**

    (1) ☐ Courtesy copy(ies) only.

    (2) ☒ Pursuant to C.C.P. Section 1010.6(e), I served the documents electronically on the persons listed in item 6.  No undeliverable message was received.

e. ☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents  to the persons at the fax numbers listed in item 6. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  March 16, 2023               _____/S/_____

                                      Cynthia M. Tallent

**NOTICE OF REMOVAL; UNDER 28 U.S.C. § 1441(a)**
**(FEDERAL QUESTION)**